UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

U.S. BANK TRUST, N.A., as trustee for
LSF8 Master Participation Trust,

                      Plaintiff,

    -against-                                    6:15-CV-0558 (LEK/TWD)

SCOTT A. DUPRE, a/k/a Scot Dupre, *et al.*,

                      Defendants.

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

This action was brought by U.S. Bank Trust, N.A., in its capacity as trustee of the LSF 8 Master Participation Trust, to foreclose on a mortgage encumbering property owned by Scott and Deborah Dupre. Dkt. No. 1 ("Complaint") ¶¶ 1–4, 12. Rome Savings Bank was also included as a defendant due to its holding of a subordinate lien on the property. Id. ¶ 5.

Currently before the Court is U.S. Bank's Motion for Default Judgment, Dkt. No. 15 ("Motion"), which was filed after the Clerk's entry of default, Dkt. No. 14. Upon review of U.S. Bank's Motion, the Court issued a series of orders—prompting a series of responses—requesting additional filings that would establish the existence of subject matter jurisdiction. Dkt. Nos. 19 ("April Order"), 21 ("First Memorandum"), 22 ("July Order"), 26 ("Second Memorandum"). As explained below, these filings have failed to do so. Accordingly, U.S. Bank's Motion is denied and this action is dismissed for lack of subject matter jurisdiction.

## II. BACKGROUND

On May 5, 2015, U.S. Bank filed its Complaint, seeking to foreclose a mortgage it held upon the real property of the Dupres after they stopped making payments on their loan. Compl. ¶¶ 1, 10–11, 13–14. Rome Savings Bank was also included as a defendant due to its holding of a subordinate lien on the property. Id. ¶ 5.

U.S. Bank alleges subject matter jurisdiction on the basis of diversity of citizenship. Id. ¶ 8. The Complaint alleges that the Dupres are both citizens of New York. Id. ¶¶ 3–4. The Complaint also states that U.S. Bank "is a National Association with its principal place of business [in] . . . Wilmington, Delaware." Id. ¶ 2. Finally, the Complaint states that Rome Savings Bank "is a corporation or other business entity formed under the laws of the United States of America with its principal place of business in New York." Id. ¶ 5.

On September 18, 2015, the Clerk of the Court entered a certificate of default as to all of the defendants in this action for their failure to respond to the Complaint and summonses. Dkt. No. 14. On October 1, 2015, U.S. Bank moved for a default judgment. Mot.

On April 28, 2016, the Court issued a Decision and Order noting possible issues with U.S. Bank's asserted basis for subject matter jurisdiction. Apr. Order. Specifically, the Court's order noted that the allegation concerning Rome Savings Bank created doubts as to its citizenship, as the Complaint did not specify the type of business entity or state of incorporation for Rome Savings Bank. Id. at 1. The order also questioned U.S. Bank's citizenship, as the Complaint only noted that its principal place of business was in Delaware without further explanation of its citizenship. Id. at 1–2.

The Court allowed U.S. Bank to file a response to the April Order, id. at 2, which it did on May 31, 2016, First Mem. As evidence for U.S. Bank's own citizenship, it attached a list of national banks, apparently from the Office of the Comptroller of the Currency, that notes the city and state of "U.S. Bank Trust National Association" as Wilmington, Delaware. Id. ¶ 12, Ex. A. Regarding Rome Savings Bank's citizenship, U.S. Bank simply reiterated its statement that Rome Savings' principal place of business is in New York, and noted that Rome Savings had listed a Rome, New York, business address on a city court transcript of judgment. Id. ¶ 13, Ex. B.

On July 1, 2016, the Court issued another Decision and Order in response to U.S. Bank's filing. July Order. In the July Order, the Court noted that the list of national banks was insufficient evidence of U.S. Bank's main office location, but allowed yet another response and directed U.S. Bank to submit a copy of its articles of association. Id. at 1–2 (citing Wachovia Bank v. Schmidt, 546 U.S. 303 (2006)). The Court also noted that there was insufficient information in the Complaint or other filings to show that U.S. Bank could maintain a suit brought on behalf of the LSF8 Master Participation Trust using only its own citizenship and without reference to the citizenship of the trust's beneficiaries, and directed U.S. Bank to file a copy of the trust instrument or other comparable evidence. Id. at 2–3. Furthermore, the Court found that the additional information concerning Rome Savings Bank was insufficient to demonstrate its citizenship, as U.S. Bank had "still not identified its state of incorporation, whether it instead is a national banking association chartered by the Office of the Comptroller of the Currency, or if the Bank has been acquired by, or merged with, another bank or corporation." Id. at 3; see also id. at 3 n.1 (identifying information suggesting that Rome Savings Bank had been acquired by another bank in 2011).

In its most recent memorandum, filed on August 10, 2016, U.S. Bank responded by reiterating that its principal place of business is in Wilmington, Delaware, and that U.S. Bank was "authorized to act on behalf of the LSF8 Master Participation Trust," and thus that only its citizenship should count for diversity purposes. Second Mem. ¶¶ 10–12. While U.S. Bank did attach the trust instrument as an exhibit, the text of that instrument was almost entirely redacted. Id. Ex. C. Additionally, U.S. Bank failed to include its own articles of association (despite the Court's request that it do so), and did not address Rome Savings Bank's citizenship in any way. Second Mem. Finally, while U.S. Bank claims that the trust instrument shows that the LSF8 Master Participation Trust should be distinguished for diversity purposes from "an unincorporated, 'artificial entity' created under state law and given the trust label," id. ¶ 12, its exhibits show that the LSF8 Master Participation trust was formed as a Delaware statutory trust and that the trust instrument was filed with the Secretary of State under the procedures for creating that type of entity, id. Exs. A, C; see also Del. Code Ann. tit. 12, § 3810 (establishing the procedures for filing certificates of trust with the Secretary of State).

## III. LEGAL STANDARD

A fundamental predicate to judgment in the federal courts is the existence of subject matter jurisdiction. "Dismissal of a case for lack of subject matter jurisdiction . . . is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'" Ford v. D.C. 37 Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). A lack of subject matter jurisdiction may not be waived, and may be raised by motion or sua sponte at any time. E.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 107 (2d Cir. 1997); see also Fed. R. Civ. P. 12(h)(3) ("If the

court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The party asserting subject matter jurisdiction carries the burden of proving its existence by a preponderance of the evidence. E.g., Makarova, 201 F.3d at 113; Augienello v. FDIC, 310 F. Supp. 2d 582, 587–88 (S.D.N.Y. 2004). This is true even on a motion for default judgment, since the principle that a default deems the well-pleaded allegations of the complaint to be admitted is inapplicable when a court doubts the existence of subject matter jurisdiction. See Transatlantic Marine, 109 F.3d at 108.

## IV.  DISCUSSION

As mentioned earlier, U.S. Bank alleges federal jurisdiction on the basis of diversity of citizenship. Compl. ¶ 8. Under the standard diversity jurisdiction statute, 28 U.S.C. § 1332(a), there must be "complete" diversity among the parties, meaning that each defendant must be a citizen of a different state from each plaintiff. E.g., Caterpillar Inc. v. Lewis, 519 U.S. 61, 67–68 (1996); Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373–74 (1978). While the Court has no reason to doubt the allegations in the Complaint contending that Scott and Deborah Dupre are both citizens of New York, Compl. ¶¶ 3–4, the Court has concerns, expressed in the July Order, about the citizenship of U.S. Bank, whether U.S. Bank's citizenship is sufficient when suing on behalf of the Master Participation Trust, and the citizenship of Rome Savings Bank. As discussed below, these concerns were not addressed by U.S. Bank's most recent filing, and it has failed to meet its burden of establishing the existence of subject matter jurisdiction.

### A.  Citizenship of U.S. Bank and the Master Participation Trust

As a national banking association, the citizenship of U.S. Bank is defined by 28 U.S.C. § 1348. That statute provides that "[a]ll national banking associations shall, for the purposes

of . . . actions by or against them, be deemed citizens of the States in which they are respectively located." At issue here is the meaning of the word "located."

In <u>Wachovia Bank v. Schmidt</u>, the Supreme Court addressed the meaning of "located" within § 1348, finding that a national banking association is located for diversity purposes "in the State designated in its articles of association as its main office." 546 U.S. at 318. As the Court noted, "[a] national bank, on formation, must designate, in its organization certificate and articles of association, the 'place where its operations of discount and deposit are to be carried on.'" <u>Id.</u> at 307 n.1 (quoting 12 U.S.C. § 22). It is this "main office" that determines the bank's home state under the banking laws and, under <u>Wachovia</u>, determines the bank's citizenship for diversity purposes. <u>Id.</u> at 307 & n.1. A change to the city of this main office may only be accomplished through an amendment of the bank's articles of association. <u>Id.</u> at 307 n.1; 12 C.F.R. § 5.40(c)(2)(i).

While U.S. Bank's filings state that its "principal executive offices" and "principal place of business" are in Delaware, Second Mem. ¶ 10 (citing <u>Hertz Corp. v. Friend</u>, 559 U.S. 77 (2010)), this confuses the test for determining the citizenship of national banking associations with that of corporations. Under <u>Hertz</u>, the principal place of business for a corporation is the corporation's "nerve center," meaning "the place where a corporation's officers direct, control, and coordinate the corporation's activities." 559 U.S. at 92–93. This test, however, does not extend beyond corporations, and the Supreme Court's diversity jurisprudence has long maintained the existence of a "doctrinal wall" between the diversity treatment of corporations and of other artificial entities. <u>E.g.</u>, <u>Carden v. Arkoma Assocs.</u>, 494 U.S. 185, 190 (1990); <u>United Steelworkers of Am. v. R.H. Bouligny, Inc.</u>, 382 U.S. 145, 151 (1965).

As U.S. Bank itself correctly said, "a federally chartered national bank . . . is a citizen of the State in which its main office, *as set forth in its articles of association*, is located." First Mem. ¶ 10 (citing Wachovia, 546 U.S. at 306–07). Here, U.S. Bank failed to provide its articles of association, and failed to state anywhere in its memorandum that Delaware is the state listed as the location of its main office in the articles of association. Second Mem. Because U.S. Bank failed to provide its articles of association or any other comparable evidence of the bank's main office, as it was directed to do in the Court's July Order, the Court finds that U.S. Bank has not sufficiently established its citizenship for purposes of diversity jurisdiction.

Even beyond U.S. Bank's failure to properly establish its own citizenship, it has also failed to show that its citizenship alone may be counted when bringing suit on behalf of the LSF8 Master Participation Trust. In Americold Realty Trust v. Conagra Foods, Inc., 136 S. Ct. 1012 (2016), the Supreme Court addressed the diversity citizenship of a real estate investment trust ("REIT") created under Maryland law. Noting that states "have applied the 'trust' label to a variety of unincorporated entities that have little in common with" traditional, gift-based trusts, the Court found that for business trusts that are separate legal entities and can sue or be sued in their own right, the citizenship of all the trust's shareholders or beneficiaries is dispositive. Id. at 1016–17.

U.S. Bank responds to Americold by noting that, unlike the REIT at issue in that case, here U.S. Bank brought suit in its own name as trustee and was "authorized to act on behalf of" the trust under the trust instrument. Second Mem. ¶¶ 11–12. Indeed, the Court in Americold left intact the rule that "when a trustee files a lawsuit in *her* name, her jurisdictional citizenship is the State to which she belongs—as is true of any natural person." 136 S. Ct. at 1016 (citing Navarro

7

Sav. Ass'n v. Lee, 446 U.S. 458, 465 (1980)). This rule, however, only applies when the trustees are the real parties in interest to the controversy, meaning, among other things, that they are "active trustees whose control over the assets held in their names is real and substantial." Navarro, 446 U.S. at 462–66.

While the Court asked U.S. Bank to provide evidence on this point (namely, the trust instrument), it has utterly failed to do so. The trust agreement attached to the Second Memorandum was almost completely redacted, and the only visible portion remaining—cited by U.S. Bank as apparently showing its active control over the trust—states that U.S. Bank "shall have only such rights, powers and duties as are specifically and expressly required by this Agreement." Second Mem. Ex. C. If anything, this provision seems to expressly reject the idea that U.S. Bank is an active trustee with real and substantial control over the trust's assets (and thus that U.S. Bank is the real party in interest under Navarro). If the rest of the trust agreement shows differently, U.S. Bank has rendered this impossible to determine by filing an otherwise completely redacted version of this document.

Despite U.S. Bank's argument, Second Mem. ¶ 12, this Delaware statutory trust seems precisely like the type considered by the Supreme Court in Americold, and U.S. Bank has failed to demonstrate that it is a real party to the controversy that can proceed in its own right and without reference to the citizenship of the trust's beneficiaries, cf. Del. Code Ann. tit. 12, § 3804(a) ("A statutory trust may sue or be sued [in its own name] . . . ."). For all of these reasons, this action must be dismissed for lack of subject matter jurisdiction.

**B. Citizenship of Rome Savings Bank**

In addition to its failure to establish the trust's citizenship, or why U.S. Bank's citizenship alone should be counted under Navarro and Americold, U.S. Bank also ignored the portion of the Court's July Order demanding additional information about the citizenship of Rome Savings Bank. July Order at 3. In the Complaint, U.S. Bank alleges that "Rome Savings Bank is a corporation or other business entity formed under the laws of the United States of America with its principal place of business in New York." Compl. ¶ 5. As the Court previously stated, this allegation is wholly insufficient to establish Rome Savings Bank's citizenship for diversity purposes. July Order at 3.

While the Court would not ordinarily call into question a well-pleaded allegation concerning the citizenship of a defaulted party, this statement of Rome Savings Bank's citizenship raises doubts about what type of entity it is and where else (aside from New York) it could be a citizen. As discussed above, the rules for determining diversity citizenship differ based on the type of entity at issue. Carden, 494 U.S. at 190; Bouligny, 382 U.S. at 151. Saying that "Rome Savings Bank is a corporation or other business entity," Compl. ¶ 5, says effectively nothing about how its citizenship is properly determined.

Also, aside from certain banking entities (such as U.S. Bank) that are chartered by the Office of the Comptroller of the Currency, corporations and other artificial entities are not "formed under the laws of the United States of America," Compl. ¶ 5; accord First Mem. ¶ 13, but instead under the laws of a specific state, see, e.g., Del. Code Ann. tit. 8, § 101 (establishing the procedures for forming a Delaware corporation). If Rome Savings Bank is structured as a corporation, it takes the citizenship of its state of incorporation in addition to that of its principal

9

place of business, 28 U.S.C. § 1332(c)(1), and if it is not incorporated, it takes the citizenship of all of its members, Carden, 494 U.S. at 195–96. U.S. Bank's filings fail to establish which states Rome Savings would be a citizen of in either case. See First Mem. ¶ 13 (stating that Rome Savings Bank's "principal place of business [is] in New York" without discussing its state of incorporation).

In its previous order, the Court expressly noted the insufficiency of the current proof concerning Rome Savings Bank's citizenship, July Order at 3, and yet U.S. Bank failed to address this issue in any way, see Second Mem. Because U.S. Bank has not sufficiently shown Rome Savings Bank's diversity citizenship, this action must be dismissed for lack of subject matter jurisdiction.

V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that U.S. Bank's Motion (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED**, that U.S. Bank's Complaint (Dkt. No. 1) is **DISMISSED** for lack of subject matter jurisdiction, and the Clerk of the Court is directed to close this action; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on U.S. Bank in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: September 20, 2016
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge